338

The STATE, Respondent,

v.

Jason Randall MORGAN, Appellant.

**Appellate Case No. 2014–000420**
**Opinion No. 5429**

Court of Appeals of South Carolina.

Heard January 5, 2016
Filed July 20, 2016

Daniel J. Farnsworth Jr., of Farnsworth Law Offices, LLC, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson, Senior Assistant Deputy Attorney General John Benjamin Aplin, and Assistant Attorney General Mary Williams Leddon, all of Columbia; and Solicitor William Walter Wilkins III, of Greenville, for Respondent.

MCDONALD, J.:

Jason Randall Morgan appeals the circuit court's order awarding restitution, arguing the settlement of the initial civil action between Morgan and Victim as well as Victim's signing of a covenant not to execute bars restitution as a condition of Appellant's probationary sentence. We disagree and affirm.

**FACTS/PROCEDURAL HISTORY**

On August 21, 2010, Jason Randall Morgan (Morgan) caused an automobile accident with Elizabeth Morales–Molina (Victim), generating both a civil claim for damages by Victim and a criminal prosecution against Morgan for felony driving under the influence (DUI). Victim sustained significant injuries, including a broken arm, a broken hip, and broken ribs. On November 18, 2010—independent of the criminal case—Victim and Morgan's insurance company settled the civil suit and entered a Covenant Not to Execute (Covenant). Pursuant to the Covenant, Morgan's insurance company agreed to pay $25,000, the primary liability insurance policy's limit. The Covenant reads, in pertinent part, as follows:

Notwithstanding any judgment that may be rendered in any such lawsuit, it is the express intent of the parties that Covenantee [Morgan], his/her/its/their agents, representa-

tives, heirs and assigns, shall never at any time, be liable to Covenantor [Victim], his/her subrogees, agents, representatives, heirs or assigns, beyond the consideration expressed herein and paid, by reason of any damages or injuries on which such judgment may be based except as herein stated. In consideration of the payment to [Victim] of the aforementioned sum [$25,000], [Victim], his/her subrogees, agents, representatives, heirs or assigns, shall not at any time, nor shall anyone for them or in their behalf, enforce against Covenantee, by execution or otherwise, any judgment that may be rendered in any such lawsuit except as herein stated. Further, immediately upon reduction to judgment of any such lawsuit, Covenantor, his/her subrogees, agents, representatives, heirs or assigns, will provide Covenantee with an executed satisfaction of said judgment. Moreover, this COVENANT or a photocopy hereof shall be considered and serve as a satisfaction of any such judgment in any claim or lawsuit presented by [Victim] against [Morgan] for the aforementioned vehicular collision or incident, and can be recorded as such should Covenantor, his/her subrogees, agents, representatives, heirs or assigns fail to execute a Satisfaction of Judgment.

The Covenant expressly reserved Victim's right to bring suit against Morgan and/or any excess liability and/or underinsured motorist insurer. Further, the Covenant states "Covenantor, Covenantee and insurer expressly reserve all rights of action, claims, demands or other legal remedies against all firms, persons or entities of any nature or kind, except as modified by the terms of this COVENANT. This COVENANT is not a release, nor shall it be construed as a release of any party, person, firm or corporation."

On June 27, 2013, Morgan pled guilty to assault and battery in the second degree and was sentenced to a prison term of three years, suspended upon service of three years' probation. After eighteen months' probation, the sentence could be terminated upon payment of all associated collections.

At an October 3, 2013 restitution hearing, the State requested that Victim be awarded restitution of $238,660.10 for outstanding medical bills related to her treatment for injuries sustained in the accident. Morgan opposed restitution, arguing

the Covenant operated to release Morgan's responsibility for any payment other than the $25,000 paid to settle the initial liability claim. The circuit court ordered restitution of $238,660.10 on December 17, 2013.

## STANDARD OF REVIEW

■ "A sentence will not be overturned absent an abuse of discretion when the ruling is based on an error of law." *State v. Dawson*, 402 S.C. 160, 163, 740 S.E.2d 501, 502 (2013).

■ In *State v. Gulledge*, our supreme court explained, "[T]he restitution hearing is part of the sentencing proceeding." 326 S.C. 220, 228, 487 S.E.2d 590, 594 (1997); *see* S.C. Code Ann. § 17–25–322(A) (2014) ("[I]n addition to *any other sentence* which it may impose, the court shall order the defendant make restitution . . . ." (emphasis added)); *see also United States v. Anglian*, 784 F.2d 765, 769 (6th Cir. 1986), *cert. denied*, 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986) (a restitution order is in the nature of a sentence, and the district court is vested with wide discretion in determining the appropriate sentence for a convicted defendant). "Therefore, during the restitution hearing, the rules governing sentencing proceedings should apply." *Gulledge*, 326 S.C. at 229, 487 S.E.2d at 595; *see Harris v. Alabama*, 542 So.2d 1312, 1314 (Ala. Crim. App. 1989) (explaining because restitution is not intended to be a civil action, a restitution hearing shall be governed by the same rules as a sentencing hearing; therefore, any evidence the court deems to have probative value may be received regardless of its admissibility under the rules of evidence). "When a question of law is presented, our standard of review is plenary." *State v. Cochran*, 369 S.C. 308, 312–13, 631 S.E.2d 294, 297 (Ct. App. 2006).

## LAW/ANALYSIS

■ Morgan argues the circuit court erred in awarding restitution because (1) Victim signed a waiver of any further recovery from Appellant and (2) the court failed to consider the award in light of S.C. Code Ann. § 17–25–322(B) and (C) (2014).

■ When a defendant is convicted of a crime causing pecuniary damages or loss to a victim, section 17–25–322(A) of

the South Carolina Code (2014) requires that the court hold a hearing to determine the amount of restitution due the victim as a result of the defendant's criminal acts. "[I]n addition to any other sentence which [the court] may impose, the court *shall* order the defendant make restitution or compensate the victim for any pecuniary damages." S.C. Code Ann. § 17–25–322(A) (emphasis added).

Additionally, section 16–3–1110(12) of the South Carolina Code (2015) states:

"Restitution" means payment for all injuries, specific losses, and expenses sustained by a crime victim resulting from an offender's criminal conduct. It includes, but is not limited to:

(i)    medical and psychological counseling expenses;

(ii)    specific damages and economic losses;

(iii)    funeral expenses and related costs;

(iv)    vehicle impoundment fees;

(v)    child care costs;  and

(vi)    transportation related to a victim's participation in the criminal justice process.

Restitution does not include awards for pain and suffering, wrongful death, emotional distress, or loss of consortium.

Restitution orders do not limit any civil claims a crime victim may file.

South Carolina has never directly addressed the question of whether a settlement and covenant not to execute between a victim and defendant prior to sentencing precludes restitution, but courts in other jurisdictions have considered the issue. As in the case at bar, in *Kirby v. State*, 863 So.2d 238, 240 (Fla. 2003), Kirby caused a traffic accident and settled victim's civil suit against him with the $25,000 policy limits from his automobile insurance policy. Kirby opposed restitution because the settlement agreement contained a release of liability. *Id.* at 241. The Florida supreme court discussed the purpose of restitution in the criminal context, explaining, "Unlike a civil claim for damages, the purpose of restitution is twofold: (1) to compensate the victim and (2) to serve the rehabilitative, deterrent, and retributive goals of the criminal justice sys-

tem." *Id.* at 242. Ultimately, the *Kirby* court held, "Because civil settlements and criminal restitution are distinct remedies with differing considerations, we hold that a settlement and release of liability on a civil claim for damages between private parties does not prohibit the trial court from fulfilling its mandatory obligation to order restitution in the criminal case." *Id.* at 240.[1]

Other courts have held that a release of liability cannot foreclose the State's ability to seek restitution if the State was not a party to the agreement. *See State v. Iniguez,* 169 Ariz. 533, 821 P.2d 194, 197 (Ct. App. 1991) (stating the distinction between civil damages and restitution means that a victim's release of civil liability does not prevent the court from ordering the criminal law remedy of restitution); *see also Fore v. State,* 858 So.2d 982, 986 (Ala. Crim. App. 2003) (same); *People v. Maxich,* 971 P.2d 268, 270 (Colo. App. 1998) (same); *State v. Applegate,* 266 Kan. 1072, 976 P.2d 936, 938 (1999) (holding the State was not a party to the settlement agreement, therefore, a civil release of claims does not and cannot specifically preclude court-ordered restitution in a *criminal* case); *People v. Bernal,* 101 Cal.App.4th 155, 162, 123 Cal. Rptr.2d 622 (Cal. Ct. App. 2002) (same); *State v. DeAngelis,* 329 N.J.Super. 178, 747 A.2d 289, 295 (Ct. App. Div. 2000) (same); *State v. Belfry,* 416 N.W.2d 811, 813 (Minn. Ct. App. 1987) (holding "the state is not barred from seeking, or the court from imposing, reasonable restitution" even though the victims received a settlement); *Urias v. State,* 987 S.W.2d 613, 614 (Tex. App. 1999) ("[T]he settlement on behalf of the

---

1. The *Kirby* decision provides for offset in the case of a civil settlement, noting: "the amount of restitution shall be set off against any civil recovery, reflecting the Legislature's recognition that although the restitution obligation is primary, the victim should not receive a double recovery." *Id.* at 243; *see* Fla. Stat. § 775.089(8) ("An order of restitution hereunder will not bar any subsequent civil remedy or recovery, but the amount of such restitution shall be set off against any subsequent independent civil recovery."). South Carolina law does not contain a provision requiring offset but as restitution is an equitable remedy, it would be reasonable to award an offset of the $25,000 paid by the liability carrier. Here, however, the medical bills remain outstanding. Victim's civil attorney did not negotiate with the providers, and the medical liens had not been addressed at the time of the restitution hearing.

injured party with the insurance company was not a bar to the trial court ordering restitution as a condition of probation.").

These holdings are consistent with the language of South Carolina's restitution statutes, which permit, but do not require, a sentencing judge to consider factors such as the defendant's resources, the victim's resources, rehabilitative effect, and the hardship on the victim. *See* S.C. Code § 17–25–322(B). In contrast, upon the finding of a defendant's simple negligence, a civil judgment concerns only the victim's damages and is not limited to pecuniary loss. Thus, we agree with the *Kirby* court's reasoning that the constructs of restitution and civil damages are separate and distinct.

Finally, the plain language of the Covenant does not preclude further litigation between the parties, let alone restitution in the criminal court. The Covenant contemplates Victim's pursuit of further legal remedies and, as the circuit court found, nothing in the agreement itself extinguished the possibility of restitution in the criminal matter.[2]

CONCLUSION

We affirm the circuit court's restitution award.

**AFFIRMED.**

SHORT and GEATHERS, JJ., concur.

---

2. Morgan further argues the circuit court failed to consider the factors enumerated in section 17–25–322 in reaching the restitution figure. We find this argument unpreserved for our review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). The applicable restitution statutes, however, permit a defendant to petition the trial court for the modification of its order and consideration of these factors. *See, e.g.* S.C. Code § 17–25–323(A) (Supp. 2015) (stating the trial court retains jurisdiction for purpose of modifying the manner in which court-ordered payments are made) and S.C. Code § 17–25–326 (2014) ("Any court order issued pursuant to the provisions of this article may be altered, modified, or rescinded upon the filing of a petition by the defendant, Attorney General, solicitor, or victim for good and sufficient cause shown by a preponderance of the evidence.").